UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

CARIBBEAN FORMS
MANUFACTURERS INC.,

Plaintiff,

vs.

PAUL KARON AND HIS WIFE DANA
WEISS KARON,

Defendants.

CIVIL NO. 97-1980 (DRD)

## OPINION AND ORDER

Pending before the Court is Plaintiff's, Caribbean Forms Manufacturers Inc. ("CFM"),

Motion For Summary Judgment (Docket No. 28), and Defendants', Paul Karon and his wife

Dana Weiss Karon ("Karons"), Answer To Motion For Summary Judgment And Cross Motion

For Summary Judgment (Docket No. 33).  Thereafter, CFM filed a Reply To Defendants Answer

To Motion For Summary Judgment (Docket No. 35), and an Answer To Cross Motion For

Summary Judgment (Docket No. 36).  Finally, Karons submitted a Motion For Leave To

Surreply To Plaintiff's Reply To Defendants' Answer To Motion For Summary Judgment And

Tendering Surreply (Docket No. 37).  Karons' request for leave to surreply (Docket No. 37), is

hereby **GRANTED**.

## I. BACKGROUND

The underlying facts that gave rise to this case are straight forward.  CFM, a Puerto Rico

corporation, on September 16, 1994 purchased, pursuant to a written Asset Purchase Agreement



AO 72A
(Rev.8/82)

("Agreement"), the assets, properties and goodwill of Caribbean Printing Industries, Karon

Business Forms, Atlantic Business Forms, Security Check Printers, Pakar, Caribbean Stationary

from the business entities and the Karons, as the sole or majority stockholders (collectively

hereinafter "Sellers"). CFM contends that Karons made representations and guarantees that

assets were genuine and valid, had arisen out of bona fide sales and deliveries of goods, and were

not subject to valid defenses, set-offs or counterclaims and were collectible within ninety (90)

days. CFM alleges, however, that Karons breached the Agreement through misrepresentations

regarding the status of the Assets and therefore, the Karons' are liable under the guarantees and

warrantees expressed within the Agreement.

On the other hand, Karons argue at all times they complied with their obligations under

the Agreement and cross motions for summary judgment asserting, inter alia, CFM has no

standing to sue Karons and if CFM does have standing the underlying transaction was a lump

sum sale, which under Puerto Rico law precludes recovery by CFM.


## II. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact . . ." FED. R. CIV. P. 56(c). "In applying this formulation, a

fact is 'material' if it potentially affects the outcome of the case," Vega-Rodriguez v. Puerto Rico

Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997), and "'genuine' if a reasonable factfinder, examining

the evidence and drawing all reasonable inferences helpful to the party resisting summary

judgment, could resolve the dispute in that party's favor." Cortés-Irizarry v. Corporación Insular,

111 F.3d 184, 187 (1ˢᵗ Cir. 1997). The court should "'look at the record ... in the light most favorable to ... the party opposing ... the motion' ... [and] indulge all inferences favorable to the party opposing the motion." Hahn v. Sargent, 523 F.2d 461, 464 (1ˢᵗ Cir. 1975) (quoting Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486 (1962)) (citations omitted). However, the nonmovant must "present definite, competent evidence to rebut the motion." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1ˢᵗ Cir. 1991), cert. denied, 504 U.S. 985 (1992). "The court may consider any material that would be admissible or usable at trial." See 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed. 1998). "But the court should do no more than this in reviewing the quality of the evidence. Most critically, it must never 'weigh the evidence and determine the truth of the matter....'" Lipsett v. University of P.R., 864 F.2d 881, 895 (1ˢᵗ Cir. 1988) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). Furthermore, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1ˢᵗ Cir. 1995) (citations omitted). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1ˢᵗ Cir. 1990).

"We believe that summary judgment procedures should be used sparingly . . . where the issues of motive and intent play leading roles . . . It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'" Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct.

486, 491 (1962); Cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll v. P.B. Diagnostic Systems, Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equipment Corp., 846 F.2d 103, 107 (1st Cir. 1988); Lipsett, 864 F.2d at 895. "Under such circumstances, jury judgments about credibility are typically thought to be of special importance." Stepanischen, 722 F.2d at 928. However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Ayala-Gerena, 95 F.3d at 95. "But when the plaintiff can point to specific facts detailed in affidavits and depositions--that is, names, dates, incidents, and supporting testimony--giving rise to an inference of discriminatory animus, the dispute must be subjected to the factfinding process." Lipsett, 864 F.2d at 895.

## III. DISCUSSION

### A. Caribbean Lacks Standing To Sue Karons

The Karons argue that Atlantic Forms Manufacturers, Inc. ("AFM") is the real party in interest under the Agreement and not CFM. The parties agree that: the Agreement was amended; CFM assigned all rights and obligations under the Agreement to AFM; Sellers executed a Bill of Sale with AFM (transferring all assets to AFM); and AFM assumed the liabilities of Sellers. See (Docket No. 33, Exhibit Nos. VIII, X, XI, XII). Karons posits that thereafter, AFM and CFM signed a Bill Of Sale And Assumption Of Liabilities, which did not constitute a reacquisition of any rights by CFM under the Agreement. See (Docket No. 33, Exhibit Nos. XIII). Thereby,

Page -4-

Karsons so contend, AFM remained the true party in interest and CFM has no standing to sue

Karons. The Courts disagrees.

The Bill Of Sale And Assumption Of Liabilities provides in pertinent part: "Atlantic has

agreed to convey to CFM the Assets; ... Atlantic hereby sells, conveys, transfers, assigns and

delivers to CFM all of Atlantic's right, title and interest in, to and under the Assets." (Docket

No. 33, Exhibit Nos. XIII). However, "Assets" is not defined within the instrument. Because

this instrument was signed on the same day in sequence with the other aforementioned

documents, the Court believes a reasonable inference is that AFM and CFM intended the

definition of AFM's "Assets" to encompass the assets of the Agreement, which Atlantic "s[old],

convey[ed], transfer[red], assign[ed] and deliver[ed] to CFM all of Atlantic's right, title and

interest in, to and under the Assets."   See id. Therefore, on the record, and affording all

inferences in CFM's favor as the Court is obligated under the summary judgment standard, see

Cortés-Irizarry v. Corporación Insular, 111 F.3d at 187, at minimum, there exists a genuine issue

of material fact of whether CFM has standing to prosecute this complaint against Karons.[1]

Consequently, as to this standing issue Karons' motion for summary judgment is **DENIED**.


**B. CFM's Motion For Summary Judgment**

The parties agree that this case is controlled by the Agreement and the amendment

---

[1] Assignments are permissible under Puerto Rico Law unless the contract explicitly prohibits.
See P.R. LAWS ANN. tit. 31, § 3372 (1930) ("The contracting parties may make the agreement
and establish the clauses and conditions which they may deem advisable, provided they are not in
contravention of law, morals, or public order."); see also P.R. LAWS ANN. tit. 31, § 3224 (1930)
(Assignment of rigts); P.R. LAWS ANN. tit. 31, § 3941 et seq. (1930).

AO 72A
(Rev.8/82)

thereto.  <u>See</u> (Docket No. 33, Exhibit I p.39) ("This Agreement, the Exhibits and Schedules hereto and the agreements, contracts and instruments delivered pursuant hereto contain the entire agreement between the parties and supersede all prior agreements and undertakings between the parties relating to the subject matter hereof and thereof."); (Docket No. 33, Exhibit I p.15) ("This Agreement ... constitutes, ..., the legal, valid and binding obligations of Seller, enforceable in accordance with their respective terms.").  CFM alleges that Karons made misrepresentations about Assets covered under the Agreement thereby running afoul of the guarantees and warrantees expressed within the Agreement by Sellers.  <u>See</u> (Docket No. 28, Statement of Material & Uncontested Facts No. 5) ("While attempting to collect the account receivables, the plaintiff became aware that the 'Sellers' and/or its agents and/or servants and/or representatives and/or employees willfully, falsely and knowingly misrepresented various material facts regarding the assets that were acquired as part of Asset Purchase Agreement.  Exhibit 2.").  Karons counter, asserting that they are not liable under the Agreement because: CFM acquired the Assets on an "as is, where is" basis; the Karons' indemnification agreement was not triggered; the fixed total or lump sum purchase price amounts to a bulk transfer under Puerto Rico law; and CFM failed to notify Sellers' creditors, including Triple S, of the sale of Sellers' Assets to CFM.  (Docket No. 33, Statement of Contested Facts Nos. 15, 20-23).  The Court begins by reciting Puerto Rico law regarding contract interpretation and then the Court will analyze the Agreement under that context.

Under Puerto Rico law when a contract wording is clear, Article 1233 and the Puerto Rico parol evidence rule militate that the Court strictly enforce the literal sense of the written contract and exclude parol evidence.  See <u>Borschow Hosp. & Medical v. Cesar Castillo</u>, 96 F.3d

10, 15-16 (1ˢᵗ Cir. 1996); P.R. Laws Ann. tit. 31, § 3471 (1991) ("If the terms of a contract are

clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its

stipulations shall be observed.  If the words should appear contrary to the evident intention of the

contracting parties, the intention shall prevail."); P.R. Laws Ann. tit. 32, App. IV, R. 69(B)

(1983) ("Rule 69(B)") ("When in an oral or written agreement, either public or private, all the

terms and conditions constituting the true and final intention of the parties have been included,

such agreement shall be deemed as complete, and therefore, there can be between the parties, or

successors in interest, no evidence extrinsic to the contents of the same, except in the following

cases: (1) Where a mistake or imperfection of the agreement is put in issue by the pleadings; (2)

Where the validity of the agreement is the fact in dispute.  This rule does not exclude other

evidence of the circumstances under which the agreement was made or to which it is related such

as the situation of the subject matter of the instrument or that of the parties, or to establish

illegality or fraud."); see also Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F.Supp.

98, 104 (D.P.R.1993), aff'd, 36 F.3d 1089 (1st Cir.1994); Vulcan Tools of P.R. v. Makita U.S.A.,

Inc., 23 F.3d 564, 567 (1ˢᵗ Cir. 1994) ("When an agreement leaves no doubt as to the intention of

the parties, a court should not look beyond the literal terms of the contract.").  "We have

interpreted this rule in tandem with Article 1233 to require courts 'to ignore [parol] evidence

when the agreement ... is clear and unambiguous.' " Borschow Hosp. & Medical v. Cesar

Castillo, 96 F.3d at 15 (quoting Mercado-Garcia v. Ponce Fed. Bank, 979 F.2d 890, 894 (1st

Cir.1992) (other citations omitted).  "Under Puerto Rican law, an agreement is 'clear' when it can

'be understood in one sense alone, without leaving any room for doubt, controversies or

difference of interpretation....' " Id. (quoting Executive Leasing Corp. v. Banco Popular de

Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995)) (other citations omitted).  To summarize, "these

provisions bar consideration of extrinsic evidence to vary the express, clear, and unambiguous

terms of a contract."  Id.  (citations omitted).

      The Court turns to the Agreement and the parties' contentions thereto.  The Agreement

comprehensively transferred Sellers' Assets to CFM.[2]  The specific assets in controversy that

CFM contends are encompassed by the Agreement are the following:

> "6.  'Sellers', personally and/or acting through its, agents, servants, representatives
> or employees misrepresented the following material facts regarding the assets that

---

[2]  Assets encompassed by the Agreement were:

"(i) all the land, structures, improvements and fixtures and all water lines, rights of way, uses,
licenses, easements, hereditaments, tenements and appurtenances belonging or appertaining
thereto including, without limiting generality of the foregoing, all of the real estate owned or
leased by seller and used in the Business as specifically identified in Schedule 2(a) (i) hereto:
(ii) all machinery, equipment, tools, vehicles, furniture, furnishings, leasehold improvements,
goods, and other tangible personal property;
(iii)  all prepaid items, unbilled costs and fees, and accounts, notes and other receivables;
(iv)  all inventories and supplies and office and other supplies;
(v)   to the extent permitted by applicable law, all rights under any written or oral contract,
agreement, leased, plan, instrument, registration, license, certificate of occupancy, other permit or
approval of any nature, or other documents, commitment, arrangement, undertaking, practice or
authorization;
(vi) all rights under any patent, trademark, service mark, trade name or copyright, whether registered
or unregistered, and any applications therefor;
(vii) all technologies, methods, formulas, data bases, trade secrets, know-how, inventions, and other
intellectual property used in the Business or under development;
(viii) all computer software (including documentation and related object and source codes);
(ix)  all rights or causes of action arising under express or implied warranties relating to the Assets;
(x)  all layouts files, artwork and design files, plates, final films and all such material
used by Seller or in the process of being created by Seller for use in connection with the Business;
(xi)  all assets and properties reflected on the Interim Balance Sheet as defined in Section 1 (i); and
(xii)  all information, files, records, data, plans, contracts and recorded knowledge, including
customer and supplier lists, related to the foregoing."

(Docket No. 33, Exhibit I pp. 7-9).

were to be purchase:

      a. The 'Sellers' represented as an account receivable, the sum of $104,530.83 owed by Triple S, Inc., when in fact said debt was subject to a prior set-off. Exhibit 2 and 4.

      b. On August 20, 1994 and September 10, 1994 the 'Sellers', falsely represented invoices amounting to $81,669.14 when in fact said invoices were for damaged work. Exhibit 2 and 3.

      c. The 'Sellers' further misrepresented that purchase orders with a book value of $41,113.00, were in process when in fact they purchase orders were not legitimitate (sic) and were duplicates. Exhibit 2 and 5.

      d. The 'Sellers', also represented accounts receivables amounting to $153,165.25, when in fact credits in that same amounts were extended to the different debtors. Exhibit 2."

See (Docket No. 28, Statement of Material & Uncontested Facts No. 6). The Plaintiff proffers an unsworn statement (pursuant to 28 U.S.C. § 1746) with attachments in support of the alleged misrepresentations by Sellers. Further, CFM avers that the Seller expressly represented and warranted that the accounts receivable as "valid and genuine" and "not subject to valid defenses, set-offs or counterclaims; and are collectible within ninety (90) days after billing at the full recorded amount."[3] And all inventory was "good and merchantable quality."[4] Lastly, CFM

---

[3] The applicable representations and warranties for accounts receivable are:

"(h) The accounts receivable of Seller arising from the Business as set forth on the Interim Balance Sheet or arising since the date thereof are valid and genuine; have arisen solely out of bona fide sales and deliveries of goods, performance of services and other business transactions in the ordinary course of business consistent with past practice; are not subject to valid defenses, set-offs or counterclaims; and are collectible within ninety (90) days after billing at the full recorded amount thereof less, in the case of accounts receivable appearing on the Interim Balance Sheet, the recorded allowance for collection losses. The allowance for collection losses on the Interim Balance Sheet has been determined as set forth in Section 2 (c) (iii)."

(Docket No. 33, Exhibit I p.16).

[4] The inventory warranties and representations follows:

"(i) All inventory of Seller used in the conduct of the Business, including without limitation raw

AO 72A
(Rev.8/82)

posits that under the Agreement the Sellers, including Karons, expressly stipulated that they will jointly indemnify CFM from all losses, including attorney's fees and expenses that CFM might suffer and or sustain in connection with any inaccuracy of any representation contained in the Agreement. See (Docket No. 33, Exhibit I pp.35-36).

CFM's motion must be denied because CFM's contentions as to the misrepresented assets fail to point to any specific reference in the record that verifies that the particular amounts (e.g., $153,165.25 Docket No. 33, Exhibit I pp.35-36) are covered by the Agreement in clear violation of Local Rule 311.12. See Dominguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D. P.R. 1997) ("Stepanischen warns ... that the failure to make specific references to the Record 'would, where appropriate, be grounds for judgment against the party.'") (quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 931 (1st Cir. 1983)); see also Corey v. Mast Road Grain & Bldg. Materials Co., Inc., 738 F.2d 11, 12 (1st Cir. 1984) ("[A] district court [is] entitled to insist upon compliance with its local rule ... ."); United States v. Proceeds of Sale of 3,888 Pounds Atlantic Sea Scallops, 857 F.2d 46 (1st Cir. 1988). More importantly, there exist genuine issues of material facts as to Agreement's meaning and scope and therefore, is imbued with issues of the intent and motive of the parties. The Court illustrates by example.

---

materials, work-in-progress and finished goods, reflected on the Interim Balance Sheet or acquired since the date thereof was acquired and has been maintained in the ordinary course of the Business; is of good and merchantable quality; consists substantially of a quality, quality and condition usable, leasable or saleable in the ordinary course of the Business; is valued at reasonable amounts based on the ordinary course of business of Seller during the past six months; and is subject to any write-down or write-off as set forth in Section 2 (c) (iii). Seller is not under any liability or obligation with respect to the return of inventory in the possession of wholesalers, retailers or other customers."

(Docket No. 33, Exhibit I pp.16-17).

One the one hand, CFM alleges the assets in controversy, first, are covered by the Agreement and the Representations and Warranties of Seller Clause, and second were misrepresented.

On the other hand, Karons insist that the Agreement, with a fixed total or lump sum purchase price, is tantamount to a "bulk sale" as contemplated by P.R. LAWS ANN. tit. 10, § 61 (1931), thereby absolving Karons of any misrepresentations claims brought by CFM. Moreover, the covenants of the Purchaser specifically state that the "Purchaser shall have completed a due diligence review of the Business (other than the Inventory) in order to ascertain the satisfactoriness of the Assets' condition for the acquisition on an 'as is, where is' basis." (Docket No. 33, Exhibit I p. 25). The Karons' indemnification clause was not triggered. See (Docket No. 33, Exhibit I p. 36, ¶ 15(c)). Finally, CFM failed to notify Sellers' creditors, including Triple S, of the sale of Sellers' Assets to CFM.

The Court has reviewed the Agreement and amendment thereto, and believes that the contract is ambiguous at least in the following pertinent respects. The contract literally defines the "Bulk Sales Act" and "Bulk Sales Notice". Moreover, the Assets were to be acquired on an "as is, where is" basis. At the same time, the Agreement specifically includes the Seller's warranties and representations. The Court believes these two obviously competing interpretations cannot be resolved simply relying on the plain meaning of the Agreement. The Court is impeded from concluding that the agreement is "clear" meaning that the contract "can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....' " Borschow Hosp. & Medical v. Cesar Castillo, 96 F.3d at 15 (citations omitted); see also P.R. LAWS ANN. tit. 31, § 3471 (1930) ("If the terms of a contract are

Page -11-

clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."). The intent of the contracting parties is crucial to the determination of these two competing interpretations of the meaning and hence the enforcement of the Agreement terms. Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct. 486, 491 (1962) ("summary judgment procedures should be used sparingly . . . where the issues of motive and intent play leading roles"); Cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll. v. P.B. Diagnostic Systems, Inc., 50 F.3d 1115, 1121 (1st Cir. 1995) (Trial courts must use a "cautious approach to summary judgment where issues of motive and intent must be resolved."); Oliver v. Digital Equipment Corp., 846 F.2d 103, 107 (1st Cir. 1988); Lipsett, 864 F.2d at 895; P.R. LAWS ANN. tit. 31, § 3472 (1930) ("In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract.").

Furthermore, the Court finds ambiguous the triggering and notification requirement under the indemnification clause. See (Docket No. 33, Exhibit I p. 36, ¶ 15(c)). On the record, the Court, cannot determine whether vel non CFM has complied with the "promptly give written notice" requirement. For instance, did CFM fulfill its obligation upon institution of this suit. The Court, again, believes the intent of the parties controls, which is in the province of a fact-finder. See id.

The Court needs to go no further. There exists issues of genuine fact as to the intent of the contracting parties that necessitates resolution by a jury.

AO 72A
(Rev.8/82)

## IV.  CONCLUSION

Wherefore, Plaintiff's, Caribbean Forms Manufacturers Inc., Motion For Summary

Judgment (Docket No. 28), Defendants', Paul Karon and his wife Dana Weiss Karon, cross

motion for summary judgment (Docket No. 33) are **DENIED**.

IT IS SO ORDERED.

**Date: September 30, 1999**

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

P \FINALORD ERS\97-1980A MSJ

Page -13-

AO 72A
(Rev.8/82)